**FOURTH DIVISION
DOYLE, P. J.,
COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 11, 2020**

# In the Court of Appeals of Georgia

A19A1990. HENRY et al. v. ATLANTA GAS LIGHT COMPANY.

DOYLE, Presiding Judge.

Constance Tondra Henry ("Henry"), acting individually and as the representative and surviving daughter of Patricia Ann Henry and Samuel Christopher Henry, is the plaintiff in a personal injury and wrongful death action against Atlanta Gas Light Company ("AGL"), based on a natural gas explosion caused by a residential gas furnace. Henry appeals from the grant of summary judgment to AGL, contending that the trial court erred by ruling that, under the facts of this case, the injuries at issue did not arise from a breach of a legal duty owed them by AGL. For the reasons that follow, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of

summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that Andrea Wood owned a rental home, and in preparation for new tenants, she called AGL to ask them to turn on the natural gas service at the rental home. Nobody was home, but Wood made arrangements to allow AGL access into the house.

On September 12, 2015, Richard West, a field specialist for AGL, visited the house to turn on the gas. The gas meter supply valve was locked in the off position, and consistent with AGL policy, West performed a fuel line and appliance inspection to discover any safety concerns before turning on the gas service. As part of this process, he unlocked the gas meter valve to check for leaks downstream of the gas meter and found none.[2] He also performed a visual inspection of the appliances and discovered problems with both the water heater and the furnace, specifically noting

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] This test is called "spotting" the meter: turning on the gas at the meter with all household appliances turned off and observing the meter for five minutes. If the meter shows that the downstream gas line is holding pressure, i.e., the meter stays in the same spot, this indicates that no gas is flowing due to a leak in the line.

2

that the gas supply line to the furnace was a flexible line that improperly led into the furnace without a grommet in the opening.[3] The grommet is a protective ring around the inside of the supply-line opening in the furnace cabinet. The grommet is intended to minimize the risk that vibration by the thin metal edge of the furnace cabinet would rub a hole in the flexible line, causing a gas leak. West also observed that the furnace gas line lacked a sediment trap, and the furnace thermostat was inoperable, so he could not further check the furnace operation or perform repairs.

Based on his observations of the furnace, West did not attempt to light it, and instead, he turned off the dedicated furnace supply valve ("cut-off valve"). To warn others about the condition of the flexible furnace line, West wrapped warning tape around the furnace cut-off valve, so that someone would have to physically remove the tape before turning on the gas supply to the furnace. Also, West attached a warning card to the furnace, writing a notation about the flexible gas line, and he left a copy of the written warning card on the kitchen counter. Specifically, with respect to the furnace, the warning cards stated:

---

[3] The water heater required an additional combustion air vent in the utility room in which it was installed. It is undisputed that the water heater was not the cause of the explosion.

The following gas appliance/equipment has been turned/left off due to the below reasons: . . . Furnace. . . Explanation: thermostat not displaying, no sediment trap, flex line thru [sic] top of furnace, left off. . . . **DO NOT CONNECT OR USE THE TAGGED APPLIANCE(S) OR CUSTOMER PIPING UNTIL YOU HAVE A PROPERLY LICENSED AND QUALIFIED AGENCY/PERSON PERFORM THE NECESSARY REPAIRS**.[4]

After leaving the warning cards and the warning tape on the furnace cut-off valve, West left the house with the house gas supply on and the furnace gas supply off.[5]

Soon thereafter, the property owner's stepson, Scott Wood, was preparing the house for the new tenants and discovered that the house did not have hot water.[6] Scott also noticed the warning card in the kitchen and called the owner to tell her that the furnace gas supply could not be turned on until the furnace was serviced. Andrea Wood, the owner, called AGL to resolve the issue, and AGL indicated that Andrea needed to "get somebody out there" to fix the appliances. Andrea then contacted a

---

[4] (Emphasis in original.)

[5] West deposed that AGL policy did not require a resident to be at the house if the gas was turned on and warning cards are left.

[6] The record is not clear as to why hot water was not available.

4

plumber to address the water heater, and she called Houser Heating and Air Conditioner to work on the furnace.

Houser sent a technician to the house on September 24, 2015. The technician saw the warning card on the furnace, and he conducted an independent examination of the appliances. The technician agreed that the furnace needed a hard gas inlet pipe instead of the flexible line, and he also noticed that certain components needed cleaning. The technician prepared a quote for the work, and after receiving authorization, the technician returned a few days later to perform the work.

During that process, the technician replaced the flexible line leading into the furnace with a hard pipe, but he reused the flexible line to reattach the gas supply line and the newly installed hard pipe going into the furnace. Due to the length of the flexible connector, it curved and made contact with the furnace exterior. The technician then opened the furnace cut-off valve, and the new tenant was able to operate the furnace.

Over time, the furnace housing vibrated as the blower motor ran, and the friction between the housing and the flexible connector created a hole in the flexible connector. On June 12, 2016, approximately nine months after AGL turned on the gas, a gas explosion occurred at the house, causing injuries to Henry and killing two

5

members of her family. The parties do not dispute that the flexible furnace gas line was the source of the explosion, and there is expert testimony based on data from the gas meter that the flexible connector began leaking on June 5 and catastrophically ruptured on June 12.

Henry sued Houser and AGL, and her father also sued on behalf of himself and his son's estate. The two cases were consolidated into the present case, and after the unrelated death of Henry's father, she is the plaintiff on behalf of herself, the estate of Patricia, and the estate of her father. Houser settled the claims against it, and AGL successfully moved for summary judgment. Henry now appeals from the grant of summary judgment to AGL.

1. Henry argues that the trial court erred by concluding as a matter of law that the injuries at issue did not arise from a breach of duty by AGL. We disagree.

As a general matter of tort law,

> the essential elements of a negligence claim are the existence of a legal duty; breach of that duty; a [sufficient] causal connection between the defendant's conduct and the plaintiff's injury; and damages. Thus, the threshold issue in a negligence action is whether and to what extent the defendant owes a legal duty to the plaintiff. This issue is a question of law. A legal duty sufficient to support liability in negligence is either a duty imposed by a valid statutory enactment of the legislature or a duty

6

imposed by a recognized common law principle declared in the reported decisions of our appellate courts.[7]

In the context of a natural gas supplier, Georgia common law defines the gas supplier's duty as follows:

[A]bsent actual knowledge of a dangerous condition, a gas supplier is not generally liable beyond the meter and service pipes. Where . . . gas appliances on private property, [are] owned or controlled by the owner or occupant of the premises, a company which merely furnishes . . . gas for such respective appliances is not responsible for the . . . condition of the . . . gas appliances, . . . and is not liable to the owner or occupant or to third persons on the premises for injuries, . . . caused by such defective condition. The rule is subject to the exception that whenever such . . . gas is supplied with actual knowledge on the part of the one supplying it of the defective and dangerous condition of the customer's appliances[,] he is liable for injuries caused by the . . . gas thus supplied for use on such defective and dangerous appliances, but no duty of inspection rests on the one supplying the electricity or the gas from the mere fact of rendering such service to the customer owning or controlling the equipment.[8]

---

[7] (Punctuation and emphasis omitted.) *Garvin v. Atlanta Gas Light Co.*, 334 Ga. App. 450, 453 (1) (779 SE2d 687) (2015).

[8] Id. at 453-454 (1) (a).

Here, it is undisputed that the explosion resulted from a hole in the flexible gas line that developed over the course of nine months after it was improperly installed by Houser. It is also clear that AGL had no knowledge of Houser's improper repair when AGL first visited the property to turn on the gas — that hazard was later caused by Houser. Further, the specific hazard identified by West and communicated to Henry was actually remedied by Houser when it installed the hard gas pipe into the furnace.

Based on this record, Henry cannot meet her burden to identify a duty breached by AGL. Consistent with AGL policy, after discovering the initial hazard, West placed warning cards on the appliance and on the kitchen counter, he turned off the gas to the furnace, and he wrapped the valve in warning tape so that it could not be turned on without removing the tape. The fact that Houser performed a negligent repair cannot be attributed to AGL because "[a] gas company is not an insurer of the safety of its customers and their agents and invitees, but is liable only for [its] acts of negligence."[9] AGL left the furnace in a safe condition (with the gas supply valve

---

[9] *Womack v. Central Ga. Gas Co.*, 85 Ga. App. 799, 803 (70 SE2d 398) (1952). See also *Westbrook v. Atlanta Gas Light Co.*, 340 Ga. App. 11, 18 (1) (795 SE2d 320) (2016) ("[I]t is plain that the subsequent actions of [the property owner], assisted by his handyman, to turn on the gas without fixing the leak was a 'new cause . . . sufficient to stand as the cause of' the explosion.").

turned off and taped) and warned the property owner of the hazard it discovered. No one notified AGL of any repair or requested it to reinspect the gas appliances; AGL simply had no knowledge of the hazard that caused the injuries in this case. Absent such knowledge, AGL had no duty to further inspect its customer's gas lines after warning the customer to repair the hazards known to it.[10] Accordingly, the trial court correctly granted summary judgment to AGL.

2. Henry's remaining enumerations are moot.

*Judgment affirmed. Coomer and Markle, JJ., concur.*

---

[10] See *Garvin*, 334 Ga. App. at 454 (1) (a) ("[K]nowledge of the existence of the customer[-]installed gas line to the outbuilding, without knowledge of an actual gas leak, is simply insufficient to give rise to a duty on the part of AGL to inspect the line to ensure that it was capped, instead of terminating with a valve."). See also *Goodhart v. Atlanta Gas Light Co.*, 349 Ga. App. 65, 75 (2) (b) (825 SE2d 465) (2019) ("[W]e certainly cannot say that AGL created a risk with the loose flexible connector behind the dryer because there is no evidence that AGL attached the connector in the first place, or ever adjusted it after the dryer was installed."). The present case is distinct from cases such as *Bray v. Atlanta Gas Light Co.*, 46 Ga. App. 629 (168 SE 96) (1933), in which this Court reversed the grant of AGL's general demurrer because AGL had knowledge of open, uncapped gas lines in a house and did not lock, warn, or otherwise prevent the gas supply to the house from being turned on by an unknown person.